## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| LONE PINE RESOURCES INC., *et al.*,[1] | ) Case No. 13-12487 (BLS) |
| | ) |
| Debtors in a Foreign Proceeding. | ) Jointly Administered |
| | ) |
| | ) Objection Deadline: January 6, 2014 at 4:00 p.m. (EST) |
| | ) Hearing Date: January 16, 2014 at 11:00 a.m. (EST) |
| | ) |

### FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER RECOGNIZING AND ENFORCING THE ORDER OF THE CANADIAN COURT SANCTIONING AND APPROVING THE CCAA PLAN

Lone Pine Resources Canada Ltd., in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors" or the "LPR Group") in a proceeding (the "CCAA Proceeding") commenced under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, and pending before the Court of Queen's Bench of Alberta (the "Canadian Court"), hereby submits this motion (the "Motion"), pursuant to sections 105(a), 1507, 1525 and 1527 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), recognizing and giving effect in the United States to the Canadian Court's order (the "Sanction Order")[2]

---

[1] The Debtors in the foreign proceeding, along with the last four digits of the United States Tax Identification Number or Canadian Business Number, as applicable, of each of the Debtors are as follows: (i) Lone Pine Resources Inc. ("LPRI") (9606); (ii) Lone Pine Resources Canada Ltd. ("LPR Canada") (0801); (iii) Lone Pine Resources (Holdings) Inc. ("LPR Holdings"); (iv) Wiser Delaware LLC ("Wiser Delaware") (7365); and (v) Wiser Oil Delaware, LLC ("Wiser Oil" and, together with LPRI and Wiser Delaware, the "U.S. Debtors") (9737).

[2] A hearing before the Canadian Court to consider entry of the Sanction Order is currently scheduled for January 9, 2014 (the "Sanction Hearing"). The proposed Sanction Order that was filed with the Canadian Court on December 23, 2013 is attached hereto as Exhibit B. To the extent that the proposed Sanction Order is modified in advance of the hearing on this Motion, an updated version will be filed with this Court.

sanctioning the plan of compromise and arrangement dated December 6, 2013 (as amended, varied or supplemented by the plan supplement, and as may be further amended, varied or supplemented from time to time in accordance with the terms thereof, the "CCAA Plan")[3], subject to the consideration and issuance of such Sanction Order by the Canadian Court following the Sanction Hearing.  In support of this Motion, the Foreign Representative relies on the *Affidavit No. 5 of Tim S. Granger*, dated December 9, 2013 (the "Granger Affidavit")[4], and in further support respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. § 1410.

## BACKGROUND

A.      **The Debtors**[5]

2.      The LPR Group is an independent oil and gas exploration, development, and production company with operations exclusively in Canada.   All reserves, producing properties and exploration prospects of the LPR Group are held by LPR Canada and are located in Alberta and British Columbia (Deep Basin and Peace River Arch areas), Quebec (Utica Shale), and the Northwest Territories (Liard Basin).

---

[3] The current version of the CCAA Plan that has been filed with the Canadian Court is attached hereto as Exhibit C.  To the extent that the CCAA Plan is modified in advance of the hearing on this Motion, an updated version will be filed with this Court.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the CCAA Plan.

[4] A copy of the Granger Affidavit is attached hereto as Exhibit D.

[5] Additional information about the Debtors' business and operations and additional facts and circumstances surrounding the CCAA Proceeding and these cases are set forth in the *Declaration of Tim S. Granger in Support of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign CCAA Proceeding, and (III) Certain Related Relief* [Docket No. 7].

2

3.     The Debtors are managed on a consolidated basis out of the LPR Group's corporate headquarters in Calgary, Alberta.  All corporate-level decision-making and corporate administrative functions affecting the Debtors, including decisions on capital expenditures and business development initiatives, are centralized in the Calgary office; indeed, the entire LPR Group management team is based in Calgary.  Additionally, all active business operations of the LPR Group are undertaken, and all producing assets of the LPR Group are located, entirely in Canada.  Although certain of the Debtors are incorporated under the laws of the United States, the LPR Group has no operations in the United States and Canada is the nerve center of the LPR Group.

4.     Although the Debtors have no operations in the United States, certain of the Debtors do have assets in the United States.  Specifically, (a) each of the U.S. Debtors holds shares in LPR Canada and (b) LPRI is the holder of a claim under the North American Free Trade Agreement relating to the expropriation without compensation by the Government of Quebec of certain of the Company's oil and gas mining rights in the Saint Lawrence Valley in Quebec.

**B.     The CCAA Proceeding and Chapter 15 Cases**

5.     On September 25, 2013, the Debtors commenced the CCAA Proceeding in the Canadian Court in order to restructure their debt obligations, for the long-term benefit of their creditors and stakeholders, by proposing to file a plan of compromise and arrangement for consideration by their creditors.  That same day, the Canadian Court entered its *Initial Order*, granting certain initial relief in connection with the CCAA Proceeding.  Subsequently on September 25, 2013, the Foreign Representative commenced the above-captioned chapter 15

3

cases (the "Chapter 15 Cases") in this Court, seeking recognition of the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

6.     In connection with the filing of the Chapter 15 Cases, the Foreign Representative filed the *Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign CCAA Proceeding* [Docket No. 4] (the "Recognition Motion"), pursuant to which the Foreign Representative sought, *inter alia*, certain provisional relief in connection with the Chapter 15 Cases.  Following a first day hearing in the Chapter 15 Cases on September 26, 2013, this Court granted the provisional relief sought in the Recognition Motion, entering the *Order Granting Provisional Relief* [Docket No. 18] (the "Provisional Order"). Pursuant to the Provisional Order, this Court, *inter alia*, recognized the Initial CCAA Order on an interim basis, stayed the commencement or continuation of any actions against the Debtors or their assets, and provided for the immediate application of section 362 of the Bankruptcy Code to the Debtors.  On October 18, 2013, this Court entered the *Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief on a Final Basis* [Docket No. 58], granting the relief requested in the Recognition Motion on a final basis.

C.     **The CCAA Plan**

7.     The CCAA Plan and related documents were filed with the Canadian Court on December 6, 2013.  Generally, the purpose of the CCAA Plan is to: (a) implement a recapitalization of the LPR Group, which will significantly reduce the indebtedness of the LPR Group and provide essential financing to address current and future liquidity needs; (b) provide for settlement of all allowed affected claims; (c) effect a release and discharge of all affected claims and released claims; and (d) ensure the continued viability and ongoing operations of the LPR Group.  The CCAA Plan has been put forward based on the expectation that, overall and in

4

the aggregate, parties who have an economic interest in the LRP Group, when considered as a whole, will derive a greater benefit from the implementation of the CCAA Plan than would result from a forced sale or liquidation of the LPR Group's assets through bankruptcy, exercise of creditors' rights or receivership proceedings.

8.    If approved by the Canadian Court and implemented in accordance with its terms, the CCAA Plan will effect a capital reorganization of the LPR Group and generally provides, among other things, for the following: [6]

(a)    Debt Exchange.  The exchange of all Notes and other Affected Unsecured Claims in consideration for new common equity in the Restructured Group in the form of voting common shares of LPR Canada, together with concurrently issued voting common shares of LPRI and, if applicable, any Backstopper's Pro-Rata Share of the Backstop Amount, except for Affected Unsecured Claims of Cash Pool Creditors;

(b)    New Investment.  An offering to Qualifying Unsecured Creditors of an amount between a minimum of US$100,000,000 and a maximum of US$110,000,000 in new preferred equity in the Restructured Group in the form of new redeemable convertible preferred shares of LPR Canada, together with concurrently issued multiple voting shares of LPRI, pursuant to which such Qualifying Unsecured Creditors may, at their election, invest additional capital and purchase their pro rata share of the New Investment;

(c)    Backstop Commitment.  The issuance of all such LPRC Preferred Shares and concurrently issued LPRI Multiple Voting Common Shares, pursuant to the Backstop Commitment, so as to ensure that the Restructured Group realizes the full New Investment Amount;

(d)    Repayment of Credit Facility.  The repayment in full of secured bank debt with proceeds from the New Investment and borrowings under the New Credit Facility;

(e)    Cancellation of Existing Parent Shares, Equity Interests and Equity Claims.  The cancellation of all Existing Parent Shares, Equity Interests and Equity

---

[6] The following description is generalized and is qualified in its entirety by reference to the specific provisions of the CCAA Plan.  Additionally, a summary of the key elements of the CCAA Plan is provided in Section 5 of the *Monitor's Sixth Report to Court Submitted by PricewaterhouseCoopers Inc.* (the "Monitor's Sixth Report"), submitted to the Canadian Court on December 10, 2013.  A copy of the Monitor's Sixth Report is attached hereto as Exhibit E.

Claims for no consideration, which in the context of the Creditor Protection Proceedings is a necessary consequence of the LPR Group's inability to pay the priority claims of Affected Unsecured Creditors in full and in compliance with the terms of the CCAA;

(f)     Cash Pool Creditors.  The payment in cash of Affected Unsecured Claims of Cash Pool Creditors that are, or that the holder thereof elects to reduce to, $10,000 or less, subject to an aggregate maximum Distributable Amount limit of $700,000 for all such claims and prorating in the event that such Affected Unsecured Claims exceed the maximum Distributable Amount; and

(g)     Releases.  On the Plan Implementation Date, the Released Parties[7] will be released and forever discharged from any and all demands, claims, actions, causes of action, counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders (including for injunctive relief or specific performance and compliance orders), expenses, executions, Encumbrances, and other recoveries on account of any liability, obligation, demand or causes of action of whatever nature, including claims for contribution or indemnity, which any Creditor or other Person may be entitled to assert (including pursuant to common law or statutory liabilities of directors, officers, managers or members of any of the Debtors), whether known or unknown, matured or unmatured, direct, indirect or derivative, foreseen or unforeseen, existing or later arising, based in whole or in part of any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, conduct, dealing or other occurrence existing or taking place on or prior to the later of the Plan Implementation Date and the date on which actions are taken to implement the Plan, that are in any way relating to, arising out of or in connection with the Affected Claims, the Note Indenture, the Current Credit Agreement, the Current Credit Facility, the Equity Interests, any Equity Claims, the Support Agreement, any Support Joinder, the Backstop Agreement, the New Shares, any Claims, the business and affairs of the LPR Group whenever or however conducted, the administration and/or management of the LPR Group, the Recapitalization, the Plan, the CCAA Proceeding, the Chapter 15 Cases, or any matter or transaction involving any of the Debtors done, occurring or undertaken in connection with the Recapitalization or the Plan.

---

[7] As defined in the CCAA Plan, the term "Released Parties" means the Debtors, the Directors, the Officers, the Monitor, the Note Indenture Trustee, the Consenting Creditors, the Backstoppers, the Agent, the Syndicate, the Company Advisors, the Noteholder Advisors and the Monitor Advisors, and their respective directors, officers, partners and employees.

D.      **The Meeting Order**

9.      On December 13, 2013, the Canadian Court entered a *Meeting Order* (the "Meeting Order")[8], which, *inter alia*, authorized and directed the Debtors to call meetings (the "Meetings") of their Affected Unsecured Creditors to vote on the CCAA Plan, and authorized the Canadian Court appointed Monitor to send copies of the approved meeting materials to the Affected Unsecured Creditors prior to the Meetings.  The Meetings are scheduled to be held on Monday, January 6, 2014, and it is anticipated that the CCAA Plan will be approved by the Required Majorities at the Meetings.  As noted above, a Sanction Hearing is scheduled for January 9, 2014 before the Canadian Court to consider sanction of the CCAA Plan.

## RELIEF REQUESTED

10.      By this Motion, the Foreign Representative seeks entry of an order, pursuant to sections 105(a), 1507, 1525 and 1527 of the Bankruptcy Code, and under well-established principles of international comity, recognizing and enforcing in full the Sanction Order and the CCAA Plan in the United States.[9]

## BASIS FOR RELIEF REQUESTED

11.      The Foreign Representative submits that the relief requested herein is authorized pursuant to section 1507 of the Bankruptcy Code.  Section 1507(a) of the Bankruptcy Code provides that "the court, if recognition is granted, may provide additional assistance to a foreign representative."  11 U.S.C. § 1507(a).  In determining whether additional assistance is

---

[8] A copy of the Meeting Order is attached hereto as Exhibit F.

[9] In order to implement the CCAA Plan, the CCAA Plan provides for certain modifications to the certificate of incorporation of LPRI, a U.S. Debtor.  Pursuant to 8 Del. C. 1953, § 303, this Court has the ability to approve these modifications without the need for shareholder approval.  Accordingly, the Foreign Representative has included a paragraph in the Proposed Order specifically approving the modifications to the certificate of incorporation of LPRI.

7

warranted, courts must consider whether such assistance, consistent with the principles of comity, will reasonably assure:

> (1)  just treatment of all holders of claims against or interests in the debtor's property;
>
> (2)  protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3)  prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4)  distribution of proceeds of the debtor's property substantially in accordance with the order prescribed in this title; and
>
> (5)  if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).[10]

12.    The plain language of section 1507(b) and relevant case law make clear that principles of comity are the overarching consideration in a court's analysis of whether to provide additional assistance.  See, e.g., Vitro, 701 F.3d 1031, at 1043-44 ("Central to Chapter 15 is comity. . . . 'It is not a rule of law, but one of practice, convenience, and expediency.' . . . . Within the context of Chapter 15, however, it is raised to a principal objective. . . . Comity considerations are explicitly included in the introduction to § 1507") (citations omitted); In re Bd. of Dirs. of Telecom Argentina, S.A., No. 05-18911 (BRL), 2006 Bankr. LEXIS 483, at *73 (Bankr. S.D.N.Y. Feb. 24, 2006) ("The importance of comity is well noted in the newly enacted

---

[10] Bankruptcy Code section 1507(b) embodies the protections contained in former Bankruptcy Code section 304, the predecessor to chapter 15.  See House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 109 (2005) ("The additional assistance is made conditional upon the court's consideration of the factors set forth in the current subsection 304(c) in a context of a reasonable balancing of interests following current case law."); In re Atlas Shipping, 404 B.R. at 739 ("while Chapter 15 replaced § 304 and provided a more structured framework for recognizing foreign proceedings, Congress specifically granted courts discretion to fashion appropriate post-recognition relief, consistent with the principles underlying § 304").  Sections 1507(b)(1)-(4) are identical to prior sections 304(c)(1)-(4), and as such, and consistent with the legislative intent, courts have recognized that jurisprudence that was developed under former section 304 continues to apply with respect to requests for relief under section 1507.  See, e.g., In re SPhinX, Ltd., 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006).

Chapter 15 . . . the major difference [from section 304 is] that comity is elevated as the prime consideration for the grant of ancillary relief to a foreign representative."), aff'd sub nom. Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom Argentina, S.A.), 2006 U.S. Dist. LEXIS 85274 (same), aff'd, 528 F.3d 162, 171 (2d Cir. 2008) (describing comity as the "ultimate consideration" under former section 304); In re Fairfield Sentry Ltd., 484 B.R. 615, 626-27 (Bankr. S.D.N.Y. 2013) (holding that the governing concept of comity is integral to the objectives of cross-border coordination and cooperation and the role of an ancillary court as an aid to the foreign main court in international insolvency proceedings); In re Petition of Garcia Avila, 296 B.R. 95, 108 n.14 (Bankr. S.D.N.Y. 2003) (noting that draft proposals of chapter 15 eliminated comity as an individual factor in favor of its inclusion in the preamble of the statute to emphasize its importance as the primary consideration when granting additional assistance to a foreign insolvency proceeding).  Thus, when applying section 1507(b), comity should be the primary consideration in deciding whether to grant the relief requested.

13.    The purpose of chapter 15 is to "incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency."  11 U.S.C. § 1501.  Its objectives include cooperation between courts of the United States and courts of foreign countries involved in cross-border insolvency cases, and the "fair and *efficient* administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3) (emphasis added).  After a foreign insolvency case is recognized as a foreign main proceeding, and its trustees as foreign representatives, "a court in the United States *shall* grant comity or cooperation to the foreign representative," 11 U.S.C. § 1509(b)(3) (emphasis added), and must "cooperate to

the maximum extent possible with a foreign court or a foreign representative," 11 U.S.C. § 1525(a).

14.    "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings" since "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." Victrixx S.S., Co., S.A. v. Salen Dry Cargo, A.B., 825 F.2d 709, 713-14 (2d Cir. 1987).  The classic definition of comity was articulated by the Supreme Court in granting enforcement powers to a foreign bankruptcy trustee:

> "Comity" . . . is recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).  The Supreme Court has recognized that the United States "cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972).  "[A]s Judge Cardozo so lucidly observed: 'We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.'"  RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liability Litig.), 349 B.R. 333, 336 (S.D.N.Y. 2006) (quoting Loucks v. Standard Oil Co., 224 N.Y. 99, 110-11 (1918) (Cardozo, J.)).

15.    Courts have recognized the heightened importance of granting comity in the insolvency context to ensure that "the assets of the debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion. Consequently, American courts have *consistently* recognized the interests of foreign courts in liquidating or winding up the affairs of their own domestic business entities."  Cunard S.S. Co.,

Ltd. v. Salen Reefer Servs. AB, 773 F.2d 452, 456-58 (2d Cir. 1985) (citing Hilton).

Accordingly, in considering judgments rendered by foreign courts in insolvency matters, comity

may be withheld only if its extension would cause American creditors to be "treated in some

manner inimical to this country's policy of equality." *Id.* at 459 (citation omitted).

16.     The principle was given even greater primacy in chapter 15, in which

comity was declared "the central concept to be addressed." See H.R. Rep. No. 109-31, pt. 1, at

109 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 172.   Consequently, while a grant of comity

under old section 304 was a matter of discretion, under chapter 15 it became mandatory, in part

because chapter 15 is now the only portal through which comity may be sought for protection of

a foreign insolvency proceeding.  11 U.S.C. § 1509.  It is therefore proper and consistent with the

principles of comity that this Court recognize and enforce the Sanction Order in the United

States.

17.     Additionally, the relief requested herein is authorized pursuant to section

1507(b) of the Bankruptcy Code because enforcement of the CCAA Plan in the United States

will reasonably assure:

> (a)     just treatment of all holders of claims against or interests in the
> Debtors' property, because the laws of Canada and the United
> States share both the same common law traditions and fundamental
> insolvency principles, and the Foreign Representative and the
> Monitor (as provided in the Monitor's Sixth Report) believe that
> the CCAA Plan is fair and reasonable;
>
> (b)     protection of holders of Affected Claims in the U.S. against
> prejudice and inconvenience in the processing of such claims in the
> CCAA Proceeding because Canadian law does not prefer the
> claims of Canadian citizens over others, and because the
> inconvenience faced by U.S. creditors in the CCAA Proceeding
> (which in this case are expected to be few in number) is no greater
> than the inconvenience faced by foreign creditors bringing claims
> in the United States;

(c)    protection of preferential or fraudulent dispositions of the Debtors' property, because in the absence of enforcement, U.S. creditors might attempt to proceed against the Debtors' assets in the United States without regard for the CCAA Proceeding, leading to unequal treatment of certain creditors, which outcome would be contrary to the fundamental purposes of U.S. bankruptcy laws; and

(d)    distribution of proceeds of the Debtors' property in a manner that is fundamentally similar to the order prescribed by the Bankruptcy Code.

18.    Finally, section 1501(a) of the Bankruptcy Code provides that the purpose of Chapter 15 includes, but is not limited to, (a) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and the other interested entities, including the debtor[,]" (b) "greater legal certainty for trade and investment[,]" and (c) the "protection and maximization of the value of the debtor's assets[.]"  11 U.S.C. § 1501(a)(2), (3), and (4).  Moreover, section 1525(a) of the Bankruptcy Code provides that, "consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative," and section 1527(3) of the Bankruptcy Code explicitly provides that one such form of cooperation may include "coordination of the administration and supervision of the debtor's assets and affairs."  11 U.S.C. §§ 1525(a); 1527(3).

19.    The Sanction Order and the method of satisfying Affected Claims that it prescribes provide a fair and effective framework by which the Debtors' property will be allocated to the holders of Affected Unsecured Claims.  Recognition of the Sanction Order will further the administration of the CCAA Proceeding and the accompanying Chapter 15 Cases by establishing the structure by which the Debtors will exit these insolvency proceedings, which have been conducted with remarkable efficiency and substantial consensus among parties in interest.  As such, enforcement of the Sanction Order in the United States will ensure the efficient administration of the Debtors' estates on a uniform basis while simultaneously

12

promoting the concepts of international cooperation in accordance with chapter 15 of the Bankruptcy Code.

20.     The Foreign Representative further submits that the enforcement and recognition of the Sanction Order and the CCAA Plan in the United States is not manifestly contrary to the public policy of the United States.  Indeed, the manner in which the property is to be distributed under the CCAA Plan is consistent with restructuring methods contemplated by the Bankruptcy Code and U.S. insolvency principles.   Accordingly, section 1506 of the Bankruptcy Code does not present any bar to the enforcement of the Sanction Order or the CCAA Plan.  Moreover, relief similar to the relief requested herein has been granted by courts in this and other districts in the context of chapter 15 proceedings relating to Canadian entities.  See, e.g., In re Angiotech Pharmaceuticals, Inc., Case No. 11-10269 (KG) (Bankr. D. Del. Apr. 7, 2011); In re Fraser Papers Inc., Case No. 09-12123 (KJC) (Bankr. D. Del. Feb. 11, 2011); In re Abitibi-Consolidated Inc., Case No. 09-11348 (KJC) (Bankr. D. Del. Jan. 6, 2011); In re Quebecor World Inc., Case No. 08-13814 (JMP) (Bankr. S.D.N.Y. July 1, 2009).

21.     Based on the foregoing, the Foreign Representative respectfully requests that this Court recognize and give effect in the United States to the Sanction Order and the CCAA Plan pursuant to sections 105(a), 1507, 1525 and 1527 of the Bankruptcy Code, and under well-established principles of international comity and cooperation.

## NOTICE

22.     In accordance with the *Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice* [Docket No. 17], entered by the Bankruptcy Court on September 26, 2013, notice of this Motion has been provided via overnight mail or hand delivery to: (a) all persons or bodies authorized to administer foreign proceedings of the Debtors; (b)

13

Case 13-12487-BLS    Doc 94    Filed 12/23/13    Page 14 of 15

counsel to the Agent; (c) U.S. Bank National Association, as Trustee of the Senior Notes; (d) the Office of the United States Trustee for the District of Delaware; and (e) all parties that have requested notice of these proceedings pursuant to Bankruptcy Rule 2002.  In light of the relief requested herein, the Foreign Representative respectfully submits that no other or further notice of this Motion is necessary under the circumstances.

## CONSENT TO JURISDICTION

23.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Foreign Representative consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NO PRIOR REQUEST

24.     No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) granting the relief sought herein and (ii) granting the Foreign Representative such other and further relief as the Court deems just and proper.

14

RLF1 9711637v.3

Dated: December 23, 2013
      Wilmington, Delaware

Respectfully submitted,

*/s/ Lee E. Kaufman*
Mark D. Collins (No. 2981)
Lee E. Kaufman (No. 4877)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

Steven M. Abramowitz
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone:  (212) 237-0137
Facsimile:  (917) 849-5381

- and -

Rebecca L. Petereit
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone:  (214) 220-7700
Facsimile: (214) 220-7716

*Attorneys for the Foreign Representative*

15